IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **PAYNE INC.** *et al*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. 1:21-00048-JMC |
| **BORE EXPRESS, INC.** *et al*, | * | |
| Defendants. | * | |

* * * * * * *

## MEMORANDUM AND ORDER

This lawsuit stems from a multi-vehicle accident amid an ice storm on December 17, 2016, where Plaintiff Rickell was rear-ended by Defendant Alas' tractor trailer, causing personal injuries and property damage. Presently before the Court is Defendants' Motion in Limine to Exclude Plaintiffs' Liability Expert, Stephen Chewning, based on Federal Rule of Evidence 702 concerning the admissibility of expert testimony. (ECF No. 94). Plaintiffs have filed an Opposition. (ECF No. 106). The Court finds that no hearing is necessary. Loc. R. 105.6 (D. Md. 2021). For the reasons set forth more fully below, Defendants' Motion is DENIED.

I.  **STANDARD OF REVIEW**

Under Federal Rule of Evidence 104(a), the court is responsible for determining "preliminary questions concerning the qualification of a person to be a witness" and "the admissibility of evidence," including the admissibility of expert testimony under Federal Rule of Evidence 702. *Young v. Swiney*, 23 F. Supp. 3d 596, 609 (D. Md. 2014); *see also Fireman's Fund Ins. Co. v. Tecumseh Prods. Co.*, 767 F. Supp. 2d 549, 553 (D. Md. 2011). Rule 702 permits a properly qualified expert witness to testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

>(c) the testimony is the product of reliable principles and methods; and
>(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The party seeking admission of the expert testimony bears the burden of establishing admissibility by a preponderance of the evidence." *Fireman's Fund Ins. Co.*, 767 F. Supp. 2d at 553; *see also Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n. 10 (1993)).

Under the Supreme Court's decision in *Daubert*, the trial court serves as the gatekeeper, making a pretrial determination "of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. at 592-93. With respect to the reliability of an expert's reasoning or methodology, the Court in *Daubert* articulated several relevant factors: (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community. *Cooper*, 259 F.3d at 199 (citing *Daubert*, 509 U.S. at 593-94).

Ironically, though intended to lower the threshold for the admissibility of expert testimony, *Daubert* has become a talisman for those seeking exclusion of expert testimony of all types by attempting to "*Daubertize*" experts through rigid application of the Supreme Court's enunciated factors. However, the Supreme Court itself has cautioned that these factors are not a "definitive checklist," and their application should instead be "tied to the facts of a particular case." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (citations and internal punctuation marks omitted). Such guidance implicitly recognizes that some types of expert testimony are more suited

to existing frameworks of scientific rigor than others. For example, determining whether a particular ignition source could generate the requisite heat to ignite a particular combustible is easily assessed based on known standards in physics, chemistry and materials science. By contrast, whether a painting is a forgery may be more reliant on the experience of the expert and "softer" criteria, such as comparisons to other works or other methods recognized in the discipline.

Accordingly, while "[e]vidence that has a greater potential to mislead than enlighten should be excluded," *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999), it need not be "irrefutable or certainly correct," *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006), to be admitted. To the contrary, Rule 702 favors admissibility if the testimony will assist the trier of fact. *See Westberry*, 178 F.3d at 261; *Mack v. Amerisourcebergen Drug Cor.*, 671 F. Supp. 2d 706, 709 (D. Md. 2009). Further, *Daubert* "is not a tool to challenge the persuasive value of an expert's conclusions . . . [or] intended to take the place of vigorous cross-examination or intrude on the province of the jury." *See Ruark v. BMW of North Am., LLC*, No. ELH-09-2738, 2014 U.S. Dist. LEXIS 11969 *19 (D. Md. Jan. 30, 2014). "In other words, the Supreme Court did not intend the gatekeeper role to 'supplant the adversary system or the role of the [factfinder]: [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *See Id*. at *11 (quoting *Allison v. McGhan Medical Corp*., 184 F.3d 1300, 1311-12 (11th Cir.1999)).

Against this backdrop, the Court analyzes Defendants' efforts to exclude testimony from Plaintiffs' liability expert, Stephen B. Chewning, a Certified Traffic Accident Reconstructionist. Mr. Chewning offers opinions regarding Plaintiff Rickell's compliance standards governing the safe operation of a tractor trailer and, correspondingly, Defendant Alas' alleged negligence in not avoiding a collision under similar circumstances. Defendants do not attack Mr. Chewning's

3

credentials as an experienced traffic accident expert. Rather, Defendants criticize Mr. Chewning's methodology as being insufficient and ultimately unhelpful to a jury.

## II. ANALYSIS

In short, Mr. Chewning's methodology was to review video of the accident on a frame-by-frame basis, analyze the relative time sequence and outcomes of various vehicle events on the video, and compare that analysis to the requirements of various Federal Motor Carrier Safety Act ("FMCSA") regulations. (ECF No. 94, Ex. 1 at 4-5; ECF No. 106 at 5-6). Defendants are critical of Mr. Chewning's failure to calculate speed and distance with precision, and rely instead only on the time between events and the relative actions and events of the vehicles depicted in the video. (ECF No. 94, Ex. 1 at 6). Defendants highlight that Mr. Chewning failed to adequately consider other available data, including the police crash investigation report and Defendant Alas' own testimony regarding his alleged evasive maneuvers to avoid the collision. *Id*. Defendants charge that Mr. Chewning's opinion that Defendant Alas was at fault is simply based on an observation of a collision from limited video of the occurrence. *Id*. at 14-16.

Mr. Chewning admits that he did not do a "full" crash reconstruction in this case. Rather, he was asked for and completed a detailed analysis of a bystander video. (ECF No. 94, Ex. 4 at 14). Although Mr. Chewning did review over 200 scene photographs, he did not rely on physical roadway or scene evidence such as marks on the roadway. *Id*. at 14-15. He performed no testing other than to verify the frame rate of the video so as to calculate time. *Id*. He did no specific calculations of speed or distance, nor were such calculations possible from the video. *Id*. at 17 and 19. He did review the depositions, but they did not change his analysis of the bystander video, nor his opinions in this case, which had already been formed. *Id*. at 18.

Instead, Mr. Chewning used specialized software which, among other things, allowed him to know the frame rate of the video (which he characterized as more accurate than the video's own timer) from which he was able to base his frame-by-frame analysis. *Id*. at 19. For example, the software allowed him to conclude that the tractor trailer in front of Plaintiff Rickell had come to a stop five seconds before Plaintiff Rickell's truck comes into view, which then comes to a stop approximately ten seconds later, without striking the leading truck. *Id*. at 20. Similarly, Mr. Chewning was able to calculate that Defendant Alas' truck collided with the rear of Plaintiff's truck approximately 23 seconds after that, pushing Plaintiff's truck for an additional five seconds after impact. *Id*.

From this analysis of the video events and time sequence, Mr. Chewning opines "based on the knowledge of what a truck will do and won't do" that Plaintiff Rickell's ability to stop his truck without hitting the truck in front of him and without jackknifing (despite having an empty trailer), means Plaintiff Rickell was exhibiting appropriate braking and steering in compliance with applicable regulations. *Id*. 22-23. That is, although he cannot say with precision how fast Plaintiff Rickell was driving, the particular pressure he was applying to the brakes, and the particular steering maneuvers he performed, Mr. Chewning relies on Plaintiff's driving as demonstrated in the video to support his opinion that Plaintiff Rickell was operating within FMCSA regulations which require that in reduced visibility or hazardous road conditions "a driver shall reduce speed, as necessary, to keep control of the vehicle under the circumstances as applied." *Id*. at 23 (citing FMCSA Regulation 392.14).

Likewise, from the same analysis, Mr. Chewning concludes from Defendant Alas' failure to stop in the 23 seconds after Plaintiff Rickell's truck had come to a stop and the violent impact that ensued (including pushing Plaintiff's truck for over five seconds after impact) as

demonstrating that Defendant Alas was driving too fast for conditions, in violation of applicable FMCSA regulations. *Id*. at 29-30. Mr. Chewning also opines that the video does not demonstrate any evasive maneuvers by Defendant Alas despite Defendant Alas' testimony to the contrary. *Id*.

Mr. Chewning also supports his opinions by comparing the ability of Plaintiff Rickell and the driver of the truck in front of him to avoid a collision with Defendant Alas' inability to avoid a collision under similar conditions. As stated by Mr. Chewning:

> [Defendant Alas] failed to accomplish what the other drivers did accomplish, and what he was required to accomplish, which is to keep himself in a position with both time, distance, and speed cushion so he could avoid anything ahead of him and not have a rear-end collision…. He did not come anywhere close to stopping.

*Id*. at 32-33.

As Plaintiffs point out, frame-by-frame video analysis of bystander video such as here has been accepted in this circuit. *See, e.g., Hare v. Opryland Hosp., LLC.*, 2010 WL 3719915 (D. Md. Sept. 17, 2010) (denying motion to exclude expert report who "studied the surveillance video frame-by-frame to observe the interactions between security, management, and patrons at the Pose Ultra Lounge, and compared these actions to the industry standards of case."); *Perez v. Mountaire Farms*, 650 F.3d 350, 378 (4th Cir. 2011) (accepting expert testimony that "scroll[ed] frame-by-frame through videos of donning and doffing employees in order to measure their times to within 1/30 of a second"). Thus, the fact that a jury can watch the same video does not categorically render such proposed expert testimony unhelpful or inadequately grounded. Further, relating such analysis to professional safety standards is beyond the ken of an average juror.

The Court disagrees with Defendants' contention that Mr. Chewning's opinion is simply based on the mere happening of the accident. To the contrary, his analysis uses the events of the video and their relative timing as the accident unfolded, the relative actions of three separate tractor trailer operators under similar conditions, and the behavior of three separate but similar vehicles,

all in comparison to relevant FMCSA regulations. Speed, braking, and evasive maneuvers, etc. are all relative to the road conditions which, a juror could reasonably conclude, are best assisted by a detailed analysis from an expert showing how other trucks at approximately the same time were able to successfully navigate similar conditions. Frankly, if deprived of such testimony, the jury might be left trying to assess liability based on the mere happening of the accident, rather than have expert assistance in their decision making so as to have some basis to judge the reasonableness of all parties' behavior.

This, of course, does not render Mr. Chewning immune from impeachment based on many of the arguments Defendants make in their Motion. Also, the jury will have the opportunity to consider significant additional evidence beyond simply the opinion of Mr. Chewning in their liability assessment. Finally, they will be instructed, as is always the case, that they are free to give Mr. Chewning's opinion whatever weight they conclude it deserves, choosing to believe all, some, or none of it.

### III.  CONCLUSION

Accordingly, it is this 28th day of June 2022, hereby **ORDERED** that Defendants' Motion in Limine to Exclude Plaintiffs' Liability Expert (ECF No. 94) is DENIED.

June 28, 2022  /s/
Date J. Mark Coulson
United States Magistrate Judge